Kevin E. Gilbert, Esq. (SBN: 209236)
kgilbert@ohhlegal.com
Christopher R. Creech, Esq. (SBN: 293037)
ccreech@ohhlegal.com
**ORBACH HUFF & HENDERSON LLP**
6200 Stoneridge Mall Road, Suite 225
Pleasanton, California 94588
Telephone:    (510) 999-7908
Facsimile:    (510) 999-7918

Attorneys for Defendants
COUNTY OF ALAMEDA, STEVEN HOLLAND and MONICA POPE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AASYLEI LOGGERVALE; AASYLEI HARDGE-LOGGERVALE; and AAOTTAE LOGGERVALE,<br><br>                    Plaintiffs,<br><br>v.<br><br>COUNTY OF ALAMEDA; STEVEN HOLLAND; MONICA POPE; KEITH LEEPER; ANTHONY DeSOUSA; CAMERON GALLOWAY; and DOES 1 to 50, inclusive,<br><br>                    Defendants. | Case No. 20-cv-04679-WHA<br><br>**DEFENDANTS COUNTY OF ALAMEDA, STEVEN HOLLAND AND MONICA POPE'S MOTION FOR NEW TRIAL OR, IN THE ALTERNATIVE, FOR REMITTITUR PURSUANT TO FRCP RULE 59**<br><br>DATE:      May 11, 2023<br>TIME:      8:00 a.m.<br>DEPT:      Courtroom 12, 19th Floor<br>JUDGE:   Hon. William Alsup |

ORBACH HUFF & HENDERSON LLP

# TABLE OF CONTENTS

**Page(s)**

I.   NOTICE OF MOTION ................................................................................................ 1

II.  INTRODUCTION ...................................................................................................... 1

III. ARGUMENT ............................................................................................................ 2

    A.   Procedural Errors Biased the Jury in Plaintiffs' Favor ................................. 2

        1.   The Court Erred in Excluding Evidence Supporting Reasonable
            Suspicion ............................................................................................. 3

        2.   The Court Erred in Sua Sponte Finding Daughters' ID Searches
            Unconstitutional .................................................................................. 7

        3.   The Court Erred in Submitting Inappropriate Jury Instructions and
            Advocating for Plaintiffs ...................................................................... 8

            a.   Jury Instruction 23 Was Incorrect and Misleading .......................... 10
            b.   Jury Instruction 34 Was Misleading and Incomplete ...................... 10
            c.   Jury Instruction 38 Was Incorrect and Constituted Judicial
               Advocacy ...................................................................................... 11
            d.   Jury Instructions 40 and 44 ............................................................ 12
            e.   Jury Instruction 47............................................................................ 13

        4.   The Court Erred in Submitting Verdict Form and Belatedly
            Amending It ......................................................................................... 14

            a.   The Amended Special Verdict Form Improperly Asked the
               Jury to Decide if the County Is Liable for Officer Pope's
               Conduct ........................................................................................ 15
            b.   The Amended Special Verdict Form Improperly Suggested
               to the Jury that the County Would Pay for Any Judgements
               Against Holland and Pope............................................................. 17
            c.   The Amended Special Verdict Form Improperly Instructed
               the Jury that Defendants Violated Daughters' Constitutional
               Rights ........................................................................................... 17

    B.   Damages Are Excessive, Entitling Defendants to Remittitur or New Trial .......... 18

IV.  CONCLUSION ........................................................................................................ 21

ORBACH HUFF & HENDERSON LLP

ORBACH HUFF & HENDERSON LLP

**TABLE OF AUTHORITIES**

**Page(s)**

<u>**Federal Cases**</u>

*Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*,
  932 F.2d 442 (5th Cir. 1991) ........................................................................ 7

*Bandary v. Delta Air Lines, Inc.*,
  ____ F. Supp. ____, No. EDCV171065DSFASX, 2022 WL 18142540
  (C.D. Cal. Aug. 26, 2022) ...................................................................... 19, 20

*Bateman v. Mnemonics, Inc.*,
  79 F.3d 1532 (11th Cir. 1996) ...................................................................... 8

*Carey v. Piphus*,
  435 U.S. 247 (1978) ...................................................................................... 18

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................................................ 7

*Cervantes v. County of Los Angeles*,
  No. CV1209889DDPMRWX, 2015 WL 5163031 (C.D. Cal. Sept. 3, 2015) ................. 19, 20

*City of Oklahoma City v. Tuttle*,
  471 U.S. 808 (1985) ...................................................................................... 14

*Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*,
  532 U.S. 424 (2001) ...................................................................................... 18

*D & S Redi-Mix v. Sierra Redi-Mix & Contracting Co.*,
  692 F.2d 1245 (9th Cir. 1982) ...................................................................... 18

*Dang v. Cross*,
  422 F.3d 800 (9th Cir. 2005) ........................................................................ 11

*Dist. of Col. V. Wesby*,
  138 S. Ct. 577 (2018) ...................................................................................... 3

*Doe v. New Jersey Dep't of Corr.*,
  337 F. App'x 220 (3d Cir. 2009) .................................................................... 9

*Experience Hendrix L.L.C. v. Hendrixlicensing.com LTD*,
  762 F.3d 829 (9th Cir. 2014) .......................................................................... 2

Defs' Motion for New Trial or, in the alt, for Remittitur Pursuant to FRCP Rule 59 [20-cv-04679-WHA]

# TABLE OF AUTHORITIES

**Page(s)**

*Fenner v. Dependable Trucking Co., Inc.*,
   716 F.2d 598 (9th Cir. 1983) ...................................................................................... 18

*Fink v. Ylst*,
   198 F. App'x 587 (9th Cir. 2006) ................................................................................. 8

*Fountila v. Carter*,
   571 F.2d 487 (9th Cir. 1978) ...................................................................................... 18

*Francis v. City of New York*,
   2019 WL 8918743 (S.D.N.Y. 2019) ............................................................................ 20

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974) ..................................................................................................... 18

*Graham v. Connor*,
   490 U.S. 386 (1989) ..................................................................................................... 10

*Guy Chem. Co., Inc. v. Romaco, Inc.*,
   No. CV 3:2006-96, 2010 WL 11566506 (W.D. Pa. July 28, 2010) ........................... 9

*Harmon v. Dallas Cnty.*,
   No. 3:13-CV-2083-L, 2017 WL 3394724 (N.D. Tex. Aug. 8, 2017)........................... 7

*Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*,
   643 F. Supp. 884 (N.D. Cal. 1986) ............................................................................ 13

*Jett v. Dallas Independent School Dist.*,
   491 U.S. 701 (1989) ..................................................................................................... 14

*Lipton v. United States*,
   348 F.2d 591 (9th Cir. 1965) ....................................................................................... 9

*Liteky v. United States*,
   510 U.S. 540 (1994) ................................................................................................. 8, 17

*Masson v. New Yorker Magazine, Inc.*,
   85 F.3d 1394 (9th Cir. 1996) ....................................................................................... 8

*Mateyko v. Felix*,
   924 F.2d 824 (9th Cir. 1990) ............................................................................ 14, 17-18

ORBACH HUFF & HENDERSON LLP

- 3 -

# TABLE OF AUTHORITIES

**Page(s)**

*McMillan v. Castro,*
 405 F.3d 405 (6th Cir. 2005) ............................................................ 9

*Molski v. M.J. Cable, Inc.,*
 481 F.3d 724 (9th Cir. 2007) ........................................................ 1, 2

*Monell v. New York City Dep't of Soc. Servs.,*
 436 U.S. 658 (1978). Dkt. 72 .................................................... 15, 16

*Montgomery Ward & Co. v. Duncan,*
 311 U.S. 243 (1940) ...................................................................... 1-2

*Murphy v. City of Long Beach,*
 914 F.2d 183 (9th Cir. 1990) ............................................................ 2

*Oracle Corp. v. SAP AG,*
 765 F.3d 1081 (9th Cir. 2014) ........................................................ 18

*Ornelas v. United States,*
 517 U.S. 690 (1996) .......................................................................... 6

*Passantino v. Johnson & Johnson Consumer Prods.,*
 212 F.3d 493 (9th Cir. 2000) ............................................................ 2

*Pembaur v. City of Cincinnati,*
 475 U.S. 469 (1986) ........................................................................ 14

*Sayles v. Advanced Recovery Sys., Inc.,*
 No. 16-60640, 2017 WL 2872343 (5th Cir. July 6, 2017) .................. 7

*Schneckloth v. Bustamonte,*
 412 U.S. 218 (1973) ........................................................................ 13

*Smith v. City of Oakland,*
 538 F.Supp.2d 1217 (N.D. Cal. 2008) ............................................ 20

*State Farm Mut. Auto. Ins. Co. v. Campbell,*
 538 U.S. 408 (2003) ........................................................................ 18

*Thorsted v. Kelly,*
 858 F.2d 571 (9th Cir. 1988) ............................................................ 8

ORBACH HUFF & HENDERSON LLP

- 4 -

# TABLE OF AUTHORITIES

**Page(s)**

*United States v. Arvizu,*
534 U.S. 266 (2002) .................................................................................................... 3, 76

*United States v. Beltran-Rios,*
878 F.2d 1208 (9th Cir. 1989) .................................................................................... 8

*United States v. Blood,*
435 F.3d 612 (6th Cir. 2006) ...................................................................................... 8

*U.S. v. Brignoni–Ponce,*
422 U.S. 873 (1975) .................................................................................................... 4

*United States v. Carrizoza-Gaxiola,*
523 F.2d 239 (9th Cir. 1975) ...................................................................................... 9

*United States v. Cotterman,*
709 F.3d 952 (9th Cir. 2013) ...................................................................................... 6

*United States v. Frazier,*
584 F.2d 790 (6th Cir. 1978) ...................................................................................... 8

*United States v. Harriston,*
329 F.3d 779 (11th Cir.2003) ..................................................................................... 13

*United States v. Hickman,*
592 F.2d 931 (6th Cir. 1979) ...................................................................................... 9

*United States v. Hodge,*
19 F.3d 51 (D.C. Cir. 1994) ........................................................................................ 13

*United States v. Miguel,*
368 F.3d 1150 (2004) .................................................................................................. 6

*United States v. Morrow,*
977 F.2d 222 (6th Cir. 1992) (en banc) ..................................................................... 8

*United States v. Real Prop. Located at 20832 Big Rock Drive, Malibu, Cal. 902655,*
51 F.3d 1402 (9th Cir. 1995) ...................................................................................... 14

*United States v. Smith,*
706 F. App'x 241 (6th Cir. 2017) .............................................................................. 10, 20

ORBACH HUFF & HENDERSON LLP

# TABLE OF AUTHORITIES

**Page(s)**

*United States v. Valdes-Vega*,
    738 F.3d 1074 (9th Cir. 2013) ............................................................. 3, 4, 7

*United States v. Wright*,
    392 F.3d 1269 (2013) ..................................................................... 9

## **Federal Statutes**

42 U.S.C. section:
    1983 ............................................................................... 15

## **Federal Rules**

Federal Rules of Civil Procedure, Rule:
    50 ................................................................................ 2, 16
    59 ................................................................................ 1, 2
    59(a) .............................................................................. 1
    59(a)(1) ........................................................................... 1

ORBACH HUFF & HENDERSON LLP

Defs' Motion for New Trial or, in the alt, for Remittitur Pursuant to FRCP Rule 59 [20-cv-04679-WHA]

Defendants COUNTY OF ALAMEDA ("County"), STEVEN HOLLAND ("Holland") and MONICA POPE ("Pope") (collectively "Defendants") move for New Trial and Remittitur, pursuant to Federal Rules of Civil Procedure (FRCP), Rule 59 against Plaintiffs AASYLEI LOGGERVALE ("Mother"), AASYLEI HARDGE-LOGGERVALE ("Aasylei"); and AAOTTAE LOGGERVALE ("Aaottae")[1]) (collectively "Plaintiffs").

## I.   NOTICE OF MOTION

PLEASE TAKE NOTICE that on May 11, 2023, at 8:00 a.m. in Courtroom 12, 19th Floor, before the Honorable William Alsup of the above-referenced Court, Defendants COUNTY OF ALAMEDA ("County"), STEVEN HOLLAND and MONICA POPE (collectively "Defendants") will move for new trial or, in the alternative, for remittitur against Plaintiffs AASYLEI LOGGERVALE, AASYLEI HARDGE-LOGGERVALE and AAOTTAE LOGGERVALE (collectively "Plaintiffs") pursuant to Federal Rules of Civil Procedure, Rule 59.

Said Motion will request the Court find that the jury verdict is contrary to the weight of the evidence, that for reasons of procedural error Defendants were not given a fair trial or, in the alternative, that damages were excessive and a remittitur should issue in an amount up to $150,000 for each Plaintiff.  The Motion will be based upon this Notice, the Memorandum of Points and Authorities herein below, the record in evidence at trial, and the pleadings and other papers on file in this action, together with such other oral and documentary evidence as may be received by the Court.

## II.   INTRODUCTION

In this case, a new trial is warranted as the verdict was against the weight of the evidence, the damages were excessive, and for several procedural reasons, Defendants were not provided a fair trial. Rule 59(a) allows that a "new trial may be granted . . . for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."  FRCP 59(a)(1). Historically recognized grounds include claims "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007), quoting *Montgomery Ward & Co. v.*

---

[1] Aasylei and Aaottae are collectively "Daughters."

ORBACH HUFF & HENDERSON LLP

*Duncan*, 311 U.S. 243, 251 (1940); see also, *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n. 15 (9th Cir. 2000).  "Unlike with a Rule 50 determination, the district court, in considering a Rule 59 motion for new trial, is not required to view the trial evidence in the light most favorable to the verdict.  Instead, the district court can weigh the evidence and assess the credibility of the witnesses." *Experience Hendrix L.L.C. v. Hendrixlicensing.com LTD*, 762 F.3d 829, 842 (9th Cir. 2014).  In this instance, the district court has "the duty ... to weigh the evidence as the court saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990) (internal quotation and citation omitted); *Molski*, 481 F.3d at 729.

## III.   ARGUMENT

### A.   Procedural Errors Biased the Jury in Plaintiffs' Favor

From the inception of this trial, Defendants were precluded from bringing in pertinent evidence in support of their basis for detaining Plaintiffs, including facts supporting reasonable suspicion and probable cause which were known to and relied upon by the Deputies as part of the totality of the circumstances.  Those preclusions, along with additional omissions from and misstatements in the jury instructions, appear to have misled the jury to believe there was no objective evidence to support the Defendants' grounds for reasonable suspicion.  Adding insult to injury, the Court sua sponte (and ignoring pertinent law on this issue) found as a matter of fact that Defendants' search for Daughters' IDs was unconstitutional, without allowing any argument, evidence or instructions to be proposed to the jury to make their own finding.  Consequently, when the jury was posed with an ambiguous and vague statement of whether either Defendant Holland and/or Pope had violated some amorphous constitutional right of *any* of the Plaintiffs – combined with the Court's instruction that a constitutional violation had already occurred – it's no wonder that the jury returned a verdict in Plaintiffs' favor with an excessive amount of damages notwithstanding the utter *lack* of any evidence of harm.  As a result, Defendants were not provided a fair trial and a new trial is warranted.

///

///

Defs' Motion for New Trial or, in the alt, for Remittitur Pursuant to FRCP Rule 59 [20-cv-04679-WHA]

ORBACH HUFF & HENDERSON LLP

1

**1.**     **The Court Erred in Excluding Evidence Supporting Reasonable Suspicion**

The single biggest issue in this case was whether Defendants had reasonable suspicion to detain and search Plaintiffs.  As explained in Defendants' concurrent renewed motion for judgment as a matter of law (RJMOL), as a matter of law, Defendants are entitled to judgment in their favor on these claims, but the inability to present the additional facts in support of Defendants' reasonable suspicion unfairly prejudiced Defendants' case such that the jury appears to have concluded that the Defendants' grounds for reasonable suspicion were merely pretext for racial discrimination.  Substantive and objective evidence to support Defendants' case was not allowed to be presented, leaving Defendants with little more than a couple of pieces of objective evidence to counter Plaintiffs' allegations of racial bias.  This was especially prejudicial in a time when racial misconduct by police officers nationwide is in the forefront of jurors' minds and police are often presumed to have committed misconduct simply because misconduct was committed by other police officers elsewhere around the country.  As a result, Defendants suffered unfair prejudice (as is clear from the outrageous jury verdict) and are entitled to a new trial.

The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.  *Dist. of Col. V. Wesby*, 138 S. Ct. 577, 585 (2018).  "Because the 'balance between the public interest and the individual's right to personal security,' [citation] tilts in favor of a standard less than probable cause in such cases, ***the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion*** to believe that criminal activity 'may be afoot.'"  *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (emphasis added).  Accordingly, whether Defendants had reasonable suspicion was central to their defense against Plaintiffs' claims.

"The reasonable-suspicion standard is not a particularly high threshold to reach."  *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013).  "When discussing how reviewing courts should make reasonable-suspicion determinations, ***we have said repeatedly that they must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing***."  *Arvizu*, 534 U.S. at 273 (emphasis added).  "The nature of the totality-of-the-circumstances analysis . . . precludes . . . holding that certain factors

Defs' Motion for New Trial or, in the alt, for Remittitur Pursuant to FRCP Rule 59 [20-cv-04679-WHA]

ORBACH HUFF & HENDERSON LLP

are presumptively given no weight without considering those factors in the full context of each particular case." *Valdes-Vega,* 738 F.3d at 1079.  "Each case must turn on the ***totality*** of the particular circumstances."  *U.S. v. Brignoni–Ponce*, 422 U.S. 873, 885 n.10 (1975) (emphasis added).

In this case, Holland and Pope knew that a series of auto burglaries had recently occurred, most of which involved the theft of electronics out of vehicles in Starbucks parking lots during the early morning hours, but many of which were not written in formal incident reports.  On September 18 and 19, 2019 (the two days prior to the subject incident), vehicles in the same parking lot had been broken into.  But this was not the *only* knowledge of which Holland and Pope were aware.  Defendants were also aware that most of the auto burglaries in the area had involved African-American men, typically driving gray or silver 4-door sedans, although several incidents had no suspect or vehicle descriptions at all.  See Dkt. 167, pp. 265-272 (Defs' MIL 4) [providing offer of proof]; Exs. O to S thereto [providing deputies deposition testimony in this regard].  Defendants were aware of burglaries related to three separate Starbucks locations along this same traffic corridor.  Id.; accord Trial Ex. 17 (0:50-1:30) [Lt. DeSousa specifically identifying to Aasylei Loggervale the three locations the deputies had been investigating]; see Opp to Pltfs' MIL No. 1, Exhibit A.  It was believed the suspects targeted these locations because the coffee commuters were prone to leaving electronics in their cars while they went in to pick up their coffee.  Id.  The perpetrators would loiter in the lot to identify victims, and after smashing windows and stealing valuables, would use the confluence of numerous nearby freeway entrances to disappear.  Id.

Besides the auto burglaries noted above, on September 19, 2019 (the day before the incident underlying this action), a Big 5 in one of these parking lots was also robbed.  Dkt. 172, 6:1-23 (Defs' Opp. to Plts' MIL 1) [providing offer of proof]; Galloway Depo. Tx., 31:9-36:23.  Deputy Galloway investigated and the suspects almost perfectly matched Plaintiffs: three black females in their early 20's, with black braids, two with a medium build and one with a larger build.  AC_000108-AC_000114 [Rpt. 19-016110, Galloway's Rpt. For Big 5].  These same three women had repeatedly stolen from Big 5, including during the same period of thefts at the nearby Starbucks.  Id.  Shortly after arriving on scene in the incident underlying this action, Deputy Galloway shared this possible connection with Holland.  Id.  Deputy Galloway then investigated this possible connection, making it

Defs' Motion for New Trial or, in the alt, for Remittitur Pursuant to FRCP Rule 59 [20-cv-04679-WHA]

1  relevant to the scope of the detention and the need to identify who Plaintiffs were.  Trial Ex. 22, 1:35-

2  1:45 [Det. Galloway advising Sgt. Holland about connection and need to investigate]; accord

3  Galloway Depo. Tx., 31:9-36:23.

4      Notwithstanding the relevance of these burglaries and robberies to the Defendants' state of

5  mind and their knowledge of ongoing crime in the area lending to the Defendants' reasonable

6  suspicion in detaining and investigating Plaintiffs, Defendants were only allowed to discuss two prior

7  incidents at Starbucks' parking lots within a mile of the subject incident and were not allowed to

8  discuss the Big 5 robberies at all.  Dkt. 189, 3:11-19 (initially allowing other locations and potentially

9  Big 5); Trial Tx, at 24:6-48:7, 318:25-319:14, 404:21-405:10, 646:8-12, 653:21-658:17, 223:16-

10  225:18, 1022:24-1025:17.  This then led to only a few pieces of objective evidence (two solitary

11  incident reports and a Starbucks' employee's interview) corroborating Defendants' knowledge of

12  crimes in the area.  To date, Defendants have been unable to locate any law which would support the

13  Court's decision to limit the evidence to prior incidents that occurred within one mile of the subject

14  incident, especially when the actual evaluations by the Defendants was based on significantly greater

15  evidence.  As far as Defendants can tell, this limitation was imagined by the Court and implemented

16  without precedent or viable legal reasoning.

17      Compounding this error, the Court nonetheless allowed other incident reports into evidence

18  that Holland and Pope were not aware of prior to detaining Plaintiffs.  Holland referenced those prior

19  auto burglary reports in his report on the subject incident as background, but he only became aware of

20  the specifics in those reports *after* the incident had occurred.  See Dkt. 167, pp. 265-272 (Defs' MIL 4)

21  [objecting to introduction of these reports]; Exs. O to S thereto [providing deputies deposition

22  testimony in this regard]; accord Dkt. 195 (Defs' Add'l Briefing) [providing additional briefing on this

23  issue]; Holand Depo. Tx., 32:11-20; 33:8-34:8; 35:24-38:5 [explaining he did not know all of the

24  information contained in this report at the time].  As a result, he could not have relied on the specific

25  facts of those incidents to have obtained reasonable suspicion.  It took no time, however, for Plaintiffs'

26  counsel to then capitalize on this boon, by then scrutinizing the details of those reports, where not one

27  specifically identified an incident with a gray 4-door sedan and two African-American adults.  Trial

28  Ex. 70; Trial Tx, at 1186:8-20, 1187:3-1189:8, 773:16-787:25.  This diminished Holland's credibility

ORBACH HUFF & HENDERSON LLP

- 5 -

on what he recalled as a commonality on all the suspects and vehicles committing the recent auto burglaries.  Plaintiffs then ran amok with Holland's typographical error from one of the Starbucks incident reports to further discredit Holland and attempt to demonstrate that the Defendants could not have reasonably suspected Plaintiffs of any crime whatsoever because those solitary incident reports did not contain the same descriptions that were available in those incidents for which the Court disallowed the introduction of evidence.  See Dkt. 172, pp. 11-13 (Ex. A to Defs' Opp to Plt's MIL 1) [providing table of reports].  Defendants were further precluded from showing that, in fact, another auto burglary happened just the day after the subject incident, and was allegedly committed by two African-American men in a silver 4-door sedan, which would have restored Holland's credibility.  See Dkt. 189, 3:10-13 [excluding incident]; Dkt. 172, 6:24-7:14 (Defs' Opp. to Plts' MIL 1) [explaining relevance of incident].  As a result, without a complete set of complaints, calls, and incident reports (including the Big 5 evidence) showing the descriptions of other subjects and their cars – that *did* match Plaintiffs' descriptions – the remaining objective evidence made it seem that Defendants' basis of reasonable suspicion was mere pretext.

Defendants were entitled to have *all* of the objective evidence supporting reasonable suspicion admitted.  The full string of burglaries Defendants were investigating is relevant, not just the select few occurrences the Court allowed.  Reasonable suspicion is predicated upon the totality of the information "known to the officer at the time of the stop or search," not on some arbitrary subset of that data.  *Ornelas v. United States*, 517 U.S. 690, 701 (1996).  Additionally, a court is required to give due weight to inferences drawn from those facts by law enforcement officers.  *United States v. Cotterman,* 709 F.3d 952, 968 (9th Cir. 2013) (en banc), quoting *Ornelas,* 517 U.S. at 699.  A reasonable, good-faith error regarding the facts, absent a mistake regarding the law, can establish reasonable suspicion.  *United States v. Miguel*, 368 F.3d 1150, 1153-1154 (2004).  Consequently, even if Holland had made a mistake of fact with regard to his recollection of the prior incidents, that would not have made his reasonable suspicion any less valid.  By excluding evidence of other auto burglaries in the area and limiting the evidence to only two incidents within a mile-radius of the subject location, the jury was not allowed to know the full totality of circumstances known to Defendants which supported their basis for reasonable suspicion.

ORBACH HUFF & HENDERSON LLP

ORBACH HUFF & HENDERSON LLP

1    As the Ninth Circuit recognized a decade ago, "prior decisions holding that certain factors are

2    per se not probative or are per se minimally probative do not now comply with Supreme Court

3    precedent." *Valdes-Vega*, 738 F.3d at 1079, citing *Arvizu*, 534 U.S. at 276.  The Ninth Circuit went

4    on to state "this evaluation cannot be done in the abstract by divorcing factors from their context in the

5    stop at issue.  Each case must turn on the totality of the particular circumstances in that case." *Id.*

6    (citation and quotation omitted.)  Consequently, it was error for the Court not to admit evidence

7    supporting the totality of circumstances that supported Defendants' basis for reasonable suspicion.

8    ## 2.    The Court Erred in Sua Sponte Finding Daughters' ID Searches

9    ## Unconstitutional

10   The Court also erred in sua sponte finding that Daughters' ID searches were unconstitutional.

11   Initially, this Court partially granted Plaintiffs' motion for partial summary judgment on this issue.

12   Dkt. 106 at 6:25-8:21.  But, upon Defendants' motion for reconsideration, the Court reversed and

13   denied Plaintiffs' motion, again leaving the issue to be decided by the jury.  Dkt. 145.  Then, without

14   notice, the Court re-wrote the jury instructions and verdict form to state that the Court had, at some

15   unknown time, found that the search as to Daughters was improper and unconstitutional.[2]  Dkt. 231 at

16   13:9-11.  On the contrary, Defendants' search for the Daughters' IDs was, in fact, constitutional as a

17   matter of law and as argued in Defendants' concurrently filed RJMOL.  Nonetheless, assuming a

18   factual question remained, the jury should have determined whether the searches, as to Daughters,

19   were unlawful and instructions relating to those searches, including the automobile exception, should

20   have been given.

21   ///

22

23   _____

24   [2] While the District Court certainly has the authority to enter judgment sua sponte, it *must* provide the
     losing party with adequate notice and a reasonable opportunity to respond…" *Arkwright-Boston Mfrs.*

25   *Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445 (5th Cir. 1991); *Sayles v. Advanced Recovery*
     *Sys., Inc.*, No. 16-60640, 2017 WL 2872343, at *1 (5th Cir. July 6, 2017) ("[D]istrict courts are widely

26   acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party
     was on notice that she had to come forward with all of her evidence.") (quoting *Celotex Corp. v. Catrett*,

27   477 U.S. 317, 326 (1986)); *Harmon v. Dallas Cnty.*, No. 3:13-CV-2083-L, 2017 WL 3394724, at *7
     (N.D. Tex. Aug. 8, 2017).  Defendants here were provided with no such opportunity prior to the Court

28   changing its mind on the issue for the second time and modifying the jury instructions to state that
     Defendants violated Daughters' constitutional rights relative to the search for their identifications

The Court's erroneous conclusion as to the unconstitutionality was compounded by the improper final verdict form, which vaguely asked if Holland had violated "*any* of plaintiffs' constitutional rights." Question 1 Verdict form. Despite not having any involvement in either of the Daughters' handcuffing or search for their IDs [RT at 1112:20-1113:2] (which should have resulted in a finding of "no" as to Holland's liability for the Daughters' claims), the jury could only have concluded the answer was automatically "yes" as to Daughters because the Court had already found liability as to Daughters. There was nothing in the verdict form that stated the finding of the unconstitutionality of the Daughters' ID search was limited to Pope. See generally, Verdict. Similarly, this would have allowed the jury to conclude that Defendants were not entitled to qualified immunity and that Holland must have also violated the Bane Act as to the Daughters as well. This unfairly prejudiced the jury against Holland in particular by the finding that he had violated Daughters' constitutional rights, leading the jury to conclude that his remaining acts were intentional and in reckless disregard of all of the Plaintiffs' rights.

### 3. The Court Erred in Submitting Inappropriate Jury Instructions and Advocating for Plaintiffs

A new trial may be required when the court offers incorrect jury instructions that "infect[] the deliberative process of the jury with regard to its evaluation of the" claims presented. *Bateman v. Mnemonics, Inc.,* 79 F.3d 1532, 1549 (11th Cir. 1996). And, although the "court's formulation of the jury instructions" is within the discretion of the court (*Masson v. New Yorker Magazine, Inc.,* 85 F.3d 1394, 1397 (9th Cir. 1996)), the instructions may be successfully challenged where "the instructions, considered as a whole, were inadequate or misleading." *Id.*; *United States v. Beltran-Rios*, 878 F.2d 1208, 1214 (9th Cir. 1989). The Court must consider "whether, considering the charges as a whole, the court's instructions fairly and adequately covered the issues presented, correctly stated the law, and were not misleading." *Thorsted v. Kelly*, 858 F.2d 571, 573 (9th Cir. 1988).

Additionally, a "judge must exhibit 'impartiality in demeanor as well as in actions.'" *United States v. Morrow*, 977 F.2d 222, 225 (6th Cir. 1992) (en banc) (quoting *United States v. Frazier*, 584 F.2d 790, 794 (6th Cir. 1978)). A defendant is denied a constitutionally fair trial "[w]hen the judge's

- 8 -

1  conduct strays from neutrality," and the district court "abuses its authority when it abandons its proper

2  role and assumes that of an advocate." *United States v. Wright*, 392 F.3d 1269, 1274 (2013).  A judge

3  oversteps the bounds of propriety and deprives an individual of a fair trial "if the record discloses

4  actual bias on the part of the trial judge or leaves the reviewing court with an abiding impression that

5  the judge's remarks and questioning of witnesses projected to the jury an appearance of advocacy or

6  partiality." *Fink v. Ylst*, 198 F. App'x 587, 594 (9th Cir. 2006).

7      Judicial remarks during the course of a trial that are critical or disapproving of, or hostile to,

8  counsel, the parties, or their cases support a bias or partiality challenge if they "reveal such a high

9  degree of favoritism or antagonism as to make fair judgment impossible."  *Liteky v. United States*,

10  510 U.S. 540, 555 (1994) (emphasis in original).  Judicial misconduct may be established when

11  "the judge's remarks clearly indicate a hostility to one of the parties, or an unwarranted

12  prejudgment of the merits of the case, or an alignment on the part of the Court with one of

13  the parties." *United States v. Blood*, 435 F.3d 612, 629 (6th Cir. 2006) (internal quotation marks

14  and citations omitted).  In determining whether there was judicial misconduct, the Court must

15  consider: (1) "the nature of the issues at trial," including how lengthy and complex the trial is;

16  (2) "the conduct of counsel," and whether the attorneys are "unprepared or obstreperous"; and

17  (3) "the conduct of witnesses." *United States v. Hickman*, 592 F.2d 931, 933 (6th Cir. 1979);

18  *McMillan v. Castro*, 405 F.3d 405, 410 (6th Cir. 2005) ("In addition, this Court has considered

19  the tone of the judicial interruptions, the extent to which they were directed at one side more

20  than the other, and the presence of any curative instructions at the close of the proceedings.").

21      Emphasizing jury instructions that are favorable to one party over the other may

22  constitute judicial misconduct.  *Guy Chem. Co., Inc. v. Romaco, Inc.*, No. CV 3:2006-96, 2010

23  WL 11566506, at *8 (W.D. Pa. July 28, 2010) ("Emphasizing Romaco's reading of the express

24  guarantees in the contract would have been inappropriate.  Doing so would have put this Court

25  "on the slippery slope to interfering with (indeed substituting for) counsel's advocacy and

26  ultimately intruding on the jury's job of finding facts."); *Doe v. New Jersey Dep't of Corr.*, 337

27  F. App'x 220, 225 (3d Cir. 2009).  The harmless-error doctrine does not apply to claims of

28

Defs' Motion for New Trial or, in the alt, for Remittitur Pursuant to FRCP Rule 59 [20-cv-04679-WHA]

ORBACH HUFF & HENDERSON LLP

judicial bias; when judicial misconduct has occurred, reversal is automatic. *United States v. Smith*, 706 F. App'x 241, 253–54 (6th Cir. 2017).

### a.   Jury Instruction 23 Was Incorrect and Misleading

The final sentence of Jury Instruction 23 stated, "Officers may not stop traffic or detain individuals, even if merely to ask for identification, without at least having reasonable suspicion." Dkt. 231 at 8:28-9:2.  As Defendants argued in their Response to the Court's Proposed Final Jury Instructions and Special Verdict Form ("Defendants' Response"), this statement is in conflict with established law.  Dkt. 229 at 4:8-14; *United States v. Carrizoza-Gaxiola*, 523 F.2d 239, 241 (9th Cir. 1975), citing *Lipton v. United States*, 348 F.2d 591 (9th Cir. 1965) (stops are permitted without founded suspicion to enforce laws susceptible of no other means of effective enforcement, such as to check drivers' licenses and vehicle registrations).  The Court declined to cure the proposed jury instruction in accordance with Defendants' request, which would have provided that "Actions authorized under the Vehicle Code are sufficient to satisfy the reasonable suspicion element."  Dkt. 229 at 4:9-11.  Accordingly, the jury was left to deliberate based on an instruction with an incorrect statement of law, which was both confusing and misleading, and improperly favored Plaintiffs' case.

### b.   Jury Instruction 34 Was Misleading and Incomplete

The final sentence of Jury Instructitur 34 provided, "Where officers are presented with circumstances indicating to them that no crime was in fact committed or about to be committed, the 'severity of the crime' factor is necessarily diminished."  Dkt. 231, at 12:12-14.  As discussed in Defendants' Response to the proposed jury instructions, this sentence references the impact of after-acquired evidence in determining whether an earlier use of force was reasonable, and is both confusing and incorrect as a matter of law.  Indeed, in determining whether an officer's use of force was objectively reasonable, the inquiry must be viewed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  What the officers may have learned *after* the use of force has no bearing on whether that use of force was reasonable, because the analysis focuses solely on the information available to the officers at the time of the use of force, not thereafter.

ORBACH HUFF & HENDERSON LLP

Jury instructions "must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading." *Dang v. Cross*, 422 F.3d 800, 804 (9th Cir. 2005). Each party is "entitled to an instruction about his or her theory of the case if it is supported by law and has foundation in the evidence. *Id.* at 804-805. The Court's decision not to cure Jury Instruction 34, as requested by Defendants, ultimately left the jury with yet another confusing, misleading, and incorrect statement of law.

### c.      Jury Instruction 38 Was Incorrect and Constituted Judicial Advocacy

Jury Instruction 38 provided that, "I instruct you that even if the detention was valid in our case, the search for identifications of the passengers in our case was unconstitutional." Dkt. 226, at 13:12-13. For the reasons discussed at length above, this instruction was prejudicial, incorrect as a matter of law, partial, improper, and violated the province of the jury by taking the issue out of its hands. The statement should have been stricken from the Proposed Jury Instructions, as Defendants requested. Dkt. 229, at 4:25-5:2.

To make matters worse, although it is not the role of the Court to advocate for one party or the other in reading jury instructions to the jury, that is exactly what the Court did here. After improperly stripping the jury of its right to determine whether the search for the Daughters' identifications was constitutional, despite the fact the Court clearly struggled with this issue and changed its mind multiple times, as discussed above, the Court then compounded the error by emphasizing and repeating this finding to the jury. Specifically, the Court stated:

> "I instruct you that even if the detention was valid in our case, the search for the identifications of the passengers in our case was unconstitutional. *I'm going to repeat that. I instruct you that even if the detention was valid in our case, the search for the identification of the passengers in our case was unconstitutional. Again, if you determine that the detention itself was unlawful, then the searches were unlawful as well, as to all three.*" Trial Tx, Feb. 27, 2023, at 1287:13-18.

When counsel for Defendants objected to the Court's clear advocacy for Plaintiffs in reading the jury instructions, the Court responded that, "sometimes I read something twice because I might have – my voice might have gotten caught and it wasn't clear, but it was never intended as any kind of advocacy." Id., at 1345:7-10. That is obviously *not* what happened here. The court reporter was

ORBACH HUFF & HENDERSON LLP

clearly able to comprehend and transcribe the *first instance* of the Court telling the jury that Defendants violated the Constitution by searching for Daughters' identifications.  The Court then paused and stated, "*I'm going to repeat that*," before repeating the same point to the jury, clearly for emphasis, not clarification.  Expanding its advocacy and as discussed below, the Court again repeated it's position in the verdict form, stating, "Note:  The Court has already told you the searches for the identifications of the two passengers violated the Fourth Amendment."  Dkt. 235-1, at 4:2-3.  This is advocacy, not an attempt to clear up something that was misunderstood, and is entirely inappropriate for a sitting judge presiding over a trial.

It is not "impartial" to emphasize and repeat to the jury that the Court had found Defendants liable for the search of Daughters' identifications, particularly where the Court improperly took that question out of the jury's hands.  To the contrary, the Court's emphasis and repetition constituted advocacy for and alignment with Plaintiffs, clearly indicated to the jury hostility toward Defendants, and an unwarranted prejudgment of the merits of the case.  For that reason, no curative instruction could have sufficed to repair the Court's improper advocacy, and in any event, none was given.  Rather, in this sense, the Court strayed from neutrality, abandoned its proper role, and assumed the role of an advocate.  At minimum, the Court's emphasis and repetition to the jury that Defendants violated Plaintiffs' constitutional rights projected to the jury an appearance of advocacy and partiality, such that a fair judgment was rendered impossible by the Court's conduct.  To make matters worse, as discussed below, the Court again advised the jury that Defendants violated Daughters' constitutional rights in the Amended Special Verdict Form.

### d.      Jury Instructions 40 and 44

In Jury Instruction 40, the Court stated, "I instruct you that no valid consent was ever given to any of the searches in this case by the daughters."  Dkt. 231, at 13:21-23.  Further, in Jury Instruction 44, the Court stated, "Even though the consents were invalid in the Court's view, the question for you, on which the Court expresses no opinion, is whether all reasonable officers standing in [Officer Pope's] shoes would have known, based on the information you find was known to her, that the consents of the passengers were invalid."  Id., at 14:22-26.  As Defendants argued in Defendants'

ORBACH HUFF & HENDERSON LLP

Response to the proposed jury instructions, these remarks conflicted with the relevant law and constituted inappropriate colloquy.  Dkt. 229, at 5:3-8.

Consent can be either express or implied – if implied consent was given, then there was a valid consent.  *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973).  Thus, whether or not express consent was provided is not the end of the analysis, and whether implied consent was given is a question of fact for the jury.  *Schneckloth v. Bustamonte,* 412 U.S. 218, 227 (1973) ("whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.");  *United States v. Hodge*, 19 F.3d 51, 52 (D.C. Cir. 1994); *Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*, 643 F. Supp. 884, 895 (N.D. Cal. 1986).  The Court improperly took that question out of the jury's hands based on an incorrect and incomplete application of the law, which ultimately led to the Court providing the jury with an incorrect legal finding as a jury instruction.

Further, in addition to providing the jury with yet another incorrect finding that has no basis in the applicable law, *as a jury instruction*, it was improper advocacy for the Court to inject unnecessary and irrelevant colloquy concerning the Court's opinion into Jury Instruction 44, concerning the "Court's view" in favor of Plaintiffs.  Whether or not the Court viewed the consents as valid *after the fact,* using 20/20 hindsight, having reviewed and heard all of the evidence, is entirely irrelevant to whether a reasonable officer in Officer Pope's shoes would have known, based on the information known to her at the time, that the consents were invalid.  By injecting its unnecessary opinion into this jury instruction, the Court yet again improperly advocated for Plaintiffs and influenced the jury to find in favor of Plaintiffs.  Indeed, "juries are extremely sensitive to every word and intimation given by the judge." *United States v. Harriston,* 329 F.3d 779, 790 (11th Cir.2003) (quotation marks and brackets omitted).  Defendants objected to this language in the proposed jury instructions, to no avail.  Dkt. 229, at 5:3-8.

### e.      Jury Instruction 47

In Jury Instruction 47, the Court stated, "I also instruct you that Sheriff Ahern acted under color of law and had final policymaking authority from the County of Alameda concerning the acts at issue." Dkt. 231, at 15:26-28.  Although a trial court may determine whether a particular individual is

Defs' Motion for New Trial or, in the alt, for Remittitur Pursuant to FRCP Rule 59 [20-cv-04679-WHA]

the final policymaker of a local government unit (*Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989)), the problem with Jury Instruction 47 is that the Court did not have any evidence on which to determine that Sheriff Ahern had such policy making authority for the County.

"Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986), citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822-823 (1985). In fact, in *Pembaur,* the Court addressed this very issue, finding that even if a sheriff had discretion to hire and fire employees, if he did not also have responsibility for establishing county employment policy, then he could not be said to be a policymaker for the county. *Id.* at 484 n.12. While Sheriff Ahern may have authority to hire, fire and discipline individual employees, Plaintiffs never introduced any evidence to satisfy their burden in showing that Sheriff Ahern was the final policymaking authority for setting the County's employment policy. As such, the Court's statement in Jury Instruction 47 that "Sheriff Ahern acted under color of law and had final policymaking authority from the County of Alameda concerning the acts at issue" was erroneous and entirely unsupported by any evidence. Although Defendants objected to this instruction, the Court nevertheless provided it to the jury. Dkt. 229 at 5:9-12.

When considering all of the Court's errors, as described above, and the Court's inexplicable advocacy for Plaintiffs, the jury instructions infected the deliberative process of the jury with regard to its evaluation of the claims presented, failed to fairly and adequately cover the issues presented, incorrectly stated the applicable law, and were misleading. It is no wonder the jury found for Plaintiffs where the Court literally instructed them to do so, despite an utter lack of evidence and despite being in conflict with applicable law.

### 4. The Court Erred in Submitting Verdict Form and Belatedly Amending It

A verdict form must "fully and fairly present[ ] to the jury the issues it was called upon to decide." *Mateyko v. Felix,* 924 F.2d 824, 827 (9th Cir. 1990); *United States v. Real Prop. Located at 20832 Big Rock Drive, Malibu, Cal. 902655*, 51 F.3d 1402, 1409 (9th Cir. 1995).

Defs' Motion for New Trial or, in the alt, for Remittitur Pursuant to FRCP Rule 59 [20-cv-04679-WHA]

1    The jury began deliberating on February 27, 2023 (Trial Tx, Feb. 27, 2023, at 1302:15-18)

2   using the Court's initial Special Verdict Form, filed on February 24, 2023 (Dkt. 226-1).  Then, after the

3   jury had already been deliberating for well over a day, the Court, *sua sponte*, decided to issue an

4   Amended Special Verdict Form, which made multiple and significant improper changes that unfairly

5   and unduly influenced the jury in favor of Plaintiffs.  The only inference that can be drawn from these

6   changes is improper judicial advocacy for Plaintiffs.

7                    a.       **The Amended Special Verdict Form Improperly Asked the Jury to**

8                             **Decide if the County Is Liable for Officer Pope's Conduct**

9        Plaintiffs asserted a claim against the County for municipal liability under 42 U.S.C. section

10   1983 and *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  Dkt. 72 at 12:4-14:2.

11   Although there is more than one way to prove municipal liability under *Monell*, the *only* theory of

12   *Monell* liability that survived Defendants' prior Motion for Summary Judgement was the claim that

13   Sheriff Ahern "ratified the deputies' underlying conduct by approving the [Internal Affairs] report's

14   conclusion that no unlawful action had occurred."  Dkt. 106 at 11:7-12:28.

15       Plaintiffs then expressly limited the *Monell* claim to the conduct of Officer Holland *only*, not

16   Officer Pope.  Both the Court and Defendants' counsel specifically recall Plaintiffs' counsel stating

17   that the *Monell* claim only applied to Officer Holland.  Trial Tx, Feb. 27, 2023, at 1167:12-15 ("THE

18   COURT: …You-all told me at the outset of the case that the County would be liable only for

19   Holland, not for Pope."), 1167:22-25 ("MR. GILBERT:  Your Honor, my recollection was that they

20   made very clear that they were only going after Pope for just the search, and that the *Monell* claim was

21   only as to Deputy Holland and the detention."), 1172:9-13 (THE COURT: …I have a strong memory

22   that the plaintiffs told me that they were going for ratification only as to Holland.").  Thus, in the

23   Court's initial Special Verdict Form, the Court correctly stated:  "Further note that County of Alameda

24   has no potential liability as to any of Officer Pope's conduct."  Dkt. 226-1, at 3:24-26.  Notably,

25   Plaintiffs did not object to this language in the initial Special Verdict Form when the Court issued it on

26   Friday, February 24, 2023.  Indeed, the fact Plaintiffs' counsel did not raise an objection to this

27   language in the initial Special Verdict Form is one of the reasons the Court declined to modify the

28   form when Plaintiffs' counsel attempted to belatedly raise the issue on February 27, 2023.  Trial Tx,

ORBACH HUFF & HENDERSON LLP

Feb. 27, 2023, at 1172:22-1173:6 ("THE COURT:  …But the point about whether or not ratification was in the case as to Pope was there on Friday.  And you should have raised it.  You did not raise it.  I said it would be waived if you didn't, and it's just too late for me now to go back and try to revamp these instructions.  So I'm sorry.  It's going to be sent to the jury in the form that I have it here.  So your point, subject to what I've just said, you can raise with the Court of Appeals if it becomes – if they find Sergeant Pope guilty.").

Based on the foregoing understanding that the *Monell* claim only applied to Officer Holland's conduct, Defendants moved under Federal Rule of Civil Procedure 50 for Judgment as a Matter of Law, including on Plaintiffs' *Monell* claim.  Trial Tx, Feb. 24, 2023, at 939:16-987:15.  The Court deferred adjudication of Defendants' Rule 50 motion on both punitive damages and the *Monell* claim, until after the verdict.  Id., at 1008:6-13.

Then, for reasons that remain entirely unclear to Defendants, and despite the Court specifically ruling on February 27, 2023, that Plaintiff's counsel's failure to timely object to the subject language in the initial Special Verdict form constituted a waiver of the issue, the Court, on its own accord, issued an Amended Special Verdict Form.  Dkt. 235-1.  The Amended Special Verdict Form completely removed the language stating that the "County of Alameda has no potential liability as to any of Officer Pope's conduct," and added a new question, 5A, asking the jury, "Have plaintiffs proven by a preponderance of the evidence that Alameda County ratified (as is therefore liable for) the constitutional violations committed by Deputy Pope?"  Dkt. 235-1, at 3:18-4:18.

Despite the Court stating on the record its specific recollection that Plaintiffs' counsel had represented the *Monell* claim was only asserted against the County with respect the actions of Officer Holland, and despite the Court noting that Plaintiffs' counsel's failure to timely raise the issue following the issuance of the initial Special Verdict Form constituted a waiver, the Court continued its advocacy for Plaintiffs by nevertheless amending the Special Verdict Form on its own accord, in favor of Plaintiffs, *after the jury had been deliberating for over a day*.  Why the Court repeatedly acted partial toward Plaintiffs in this trial is something only the Court can explain, but the objective evidence is clear that such repeated and obvious partiality revealed such a high degree of favoritism

ORBACH HUFF & HENDERSON LLP

for Plaintiffs, and antagonism for Defendants, that a fair judgment was impossible. *Liteky*, 510 U.S. at 555.

> **b.   The Amended Special Verdict Form Improperly Suggested to the Jury that the County Would Pay for Any Judgements Against Holland and Pope**

In the initial Special Verdict Form, Question 6 asked the jury to determine the damages Plaintiffs had proven by a preponderance of the evidence and included a 3x3 table, with one row for each Plaintiff, and one column each for Officer Holland, Officer Pope, and the County.  Dkt. 226-1, at 4:6-20.  In the Amended Special Verdict Form, the Court removed the column for the County and added language stating, "Do not worry about a column for Alameda County."  Id., at 4:17.

This is both confusing and misleading to the jury, who initially saw a column for the County and was then advised to "not worry" about the County, without explanation.  Additionally, these changes constitute further improper judicial advocacy for Plaintiffs, where the Court's statement essentially told the jury not to "worry" about whether Officers Holland and Pope would be footing the bill for any potential judgment.  To make matters worse, despite changing the Special Verdict Form on its own accord well after the jury started deliberating, the Court would not even allow counsel for Defendants a ten-minute supplemental closing argument to address the changes the Court made.  Trial Tx, Mar. 1, 2023, at 1351:21-1353:20.

> **c.   The Amended Special Verdict Form Improperly Instructed the Jury that Defendants Violated Daughters' Constitutional Rights**

Additionally, as discussed above, when the Court, sua sponte, issued the Amended Special Verdict Form on March 1, 2023, well after the jury had begun deliberating, the Court also added the following language to Question 5:  "Note:  The Court has already told you the searches for the identifications of the two passengers violated the Fourth Amendment."  Dkt. 235-1, at 4:2-3.  For the same reasons discussed above, this statement was prejudicial, incorrect as a matter of law, constituted improper judicial advocacy, and violated the province of the jury by taking the issue out of its hands.

Considering the foregoing issues with the Amended Special Verdict Form, the form did not "fully and fairly present[ ] to the jury the issues it was called upon to decide" (*Matejko v.*

- 17 -

ORBACH HUFF & HENDERSON LLP

1  *Felix,* 924 F.2d at 827) and instead infected the jury's deliberative process with incorrect

2  statements of law and the Court's bias.

3        **B.**    **Damages Are Excessive, Entitling Defendants to Remittitur or New Trial**

4        The damages in this case were also grossly excessive and contrary to the weight of the

5  evidence.  If this Court determines that damages are excessive, the Court "may grant defendant's

6  motion for a new trial or deny the motion conditional upon the prevailing party accepting a remittitur.

7  The prevailing party is given the option of either submitting to a new trial or of accepting a reduced

8  amount of damage which the court considers justified." *Fenner v. Dependable Trucking Co., Inc.*,

9  716 F.2d 598, 603 (9th Cir. 1983).  "A remittitur must reflect 'the maximum amount sustainable by

10  the proof.'" *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1094 (9th Cir. 2014) (citing *D & S Redi-Mix v.*

11  *Sierra Redi-Mix & Contracting Co.*, 692 F.2d 1245, 1249 (9th Cir. 1982)).  "If the prevailing party

12  does not consent to the reduced amount, a new trial must be granted." *Fenner*, 716 F.2d at 603. "If the

13  prevailing party accepts the remittitur, judgment must be entered in the lesser amount." *Id.*

14        In this case the jury awarded an outrageous amount of compensatory damages to the Plaintiffs,

15  but without sufficient evidence to support the award.  See generally, Verdict.  An award of damages

16  that is "grossly excessive" or "monstrous" or "shocking to the conscience" is sufficient basis to grant

17  new trial or remittitur. *Fountila v. Carter*, 571 F.2d 487, 492 (9th Cir. 1978).  "Compensatory

18  damages [as the jury awarded here] are intended to redress the concrete loss that the plaintiff has

19  suffered by reason of the defendant's wrongful conduct." *State Farm Mut. Auto. Ins. Co. v. Campbell*,

20  538 U.S. 408, 416 (2003), citing *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S.

21  424, 432 (2001).  It is well-known that "an award of damages must be supported by competent

22  evidence concerning the injury." *Carey v. Piphus*, 435 U.S. 247, 263-64, n.20 (1978), citing *Gertz v.*

23  *Robert Welch, Inc.*, 418 U.S. 323, 350 (1974).  Although emotional distress damages are "essentially

24  subjective, genuine injury in this respect may be evidenced by one's conduct and observed by others"

25  with guidance from "appropriate instructions," but "must be supported by competent evidence

26  concerning the injury." *Id.*

27        In this case, the jury did not find that Holland's actions were "malicious, oppressive, or in

28  reckless disregard" of Plaintiffs' constitutional rights to warrant punitive damages.  Question 7,

ORBACH HUFF & HENDERSON LLP

Defs' Motion for New Trial or, in the alt, for Remittitur Pursuant to FRCP Rule 59 [20-cv-04679-WHA]

Verdict Form.  As a result, the damages had to have been based only upon what *proof* Plaintiffs presented in support of their injuries to compensate them for the alleged misconduct.  Yet, Plaintiffs failed to present any evidence to support the jury's award of compensation for the *de minimus* injuries that they allegedly suffered.  Plaintiffs claim they sustained unspecified abrasions from their handcuffs, none of which was apparent in any photographs taken after the events.  Trial Tx, 589:19-591:8, 626:16-627:8, Trial Exhs. 305-3, 305-4, 305-6, 305-7.  Nor did any Plaintiff require any treatment for any abrasions.  Trial Tx, 560:14-561:1, 590:25-591:2, 627:10-12.  Plaintiffs also did not seek any treatment for any alleged emotional distress for their claims to support any future damages. Id.  Without evidence of harm, there is nothing to support the outrageous eight-plus million dollar award given by the jury.

The following cases are instructive in demonstrating that the award in this case was grossly excessive.  In *Cervantes v. County of Los Angeles,* No. CV1209889DDPMRWX, 2015 WL 5163031, at *3 (C.D. Cal. Sept. 3, 2015), the court found the jury's award of $900,000 to be excessive, despite the unlawfulness of the defendants' conduct.  *Id.* at *3. Cervantes was a one-legged man who had been calmly sitting in his car looking at his phone, when deputies unlawfully ordered him out of his car, punched him in his face and neck, and slammed him to the ground and later spent a few hours in jail before being released.  *Id.* at *1.  Despite recognizing that Cervantes emotional distress claims appeared legitimate, the Court found the award of $900,000 to be excessive, especially in light of news reports of instances of excessive force throughout the country that had been ongoing during trial. *Id.* at *3, n.5.  The Court ordered remittitur at a lesser amount of $500,000.

More recently, a court found that a jury's award of $2.5 million was grossly excessive for a person who had been detained in handcuffs and racially profiled on a Delta Airlines flight, but who failed to evidence much, if any, physical damage related to Delta's alleged misconduct.  *Bandary v. Delta Air Lines, Inc.*, ____ F. Supp. ____, No. EDCV171065DSFASX, 2022 WL 18142540, at *3 (C.D. Cal. Aug. 26, 2022).  Although the case involved interpretations of the Montreal Convention, preventing an award for emotional distress absent physical injuries, the Court still found that the $2.5 Million award for bodily injuries to be excessive, noting that "while [Bandary] was not required to demonstrate evidence of medical visits to treat those injuries, his failure to do so suggests the injuries

Defs' Motion for New Trial or, in the alt, for Remittitur Pursuant to FRCP Rule 59 [20-cv-04679-WHA]

ORBACH HUFF & HENDERSON LLP

were not severe." *Id.* at *4.  As to Bandary's emotional distress damages, although the Court was presented with evidence of extensive future care related to Bandary's emotional distress, the Court nonetheless found the award of $6 Million also to be grossly excessive.  *Id.*

In *Smith v. City of Oakland,* 538 F.Supp.2d 1217 (N.D. Cal. 2008), the Court found a jury's award of $5,000,000 for emotional distress to be grossly excessive, despite the fact that the plaintiff was wrongfully dragged from his home in front of his family and neighbors, losing his family and job after being further wrongfully incarcerated for 4.5 months.  *Id.* at 1240-41.  The Court noted several other cases of wrongful incarceration, typically averaging awards of $1 Million per year of incarceration.  *Id.* at 1242.  Given the limited amount of time for his incarceration, the fact that he was not on death row, and was not deprived of consortium, the Court then ordered remittitur of $3,000,000.  *Id.* at 1243.

In *Francis v. City of New York,* 2019 WL 8918743 (S.D.N.Y. 2019), although plaintiff was repeatedly punched, harassed, threatened and wrongfully detained by officers for over 13 hours in jail the court recommended damages award of $37,000 for his wrongful arrest and emotional distress.  *Id.* at *7-8.  The Court noted a range from about $1,500 to $35,000 per hour of unlawful detention and/or a combination of unlawful detention and physical and emotional injuries.  *Id.* at 8.  While the Court acknowledged that the false arrest understandably caused plaintiff distress, the Court found that plaintiff had nonetheless failed to prove anything more than minimal damages and recommended an award for emotional distress of only $10,000.

Comparatively, in this case, Plaintiffs were much less harmed than any of the plaintiffs in *Cervantes, Bandary, Smith,* and *Francis*, yet all of those plaintiffs received significantly less compensation that the jury awarded in this case, demonstrating at the very least that Plaintiffs' award of $8.25 Million, with no support whatsoever, and 1,000% above comparative awards is certainly "monstrous," "shocking the conscience" or "grossly excessive."  Accordingly, if judgment is not otherwise granted for Defendants or new trial not otherwise ordered, a remittitur should issue.  Defendants suggest that a remittitur in an amount up to $150,000 for each Plaintiff is a fair award.

///

///

Defs' Motion for New Trial or, in the alt, for Remittitur Pursuant to FRCP Rule 59 [20-cv-04679-WHA]

ORBACH HUFF & HENDERSON LLP

## IV.    CONCLUSION

For all the reasons stated above, Defendants respectfully request that if judgment as a matter of law is not otherwise granted in favor of Defendants, that Defendants' motion for new trial be granted in the alternative or, a remittitur issued in an amount up to $150,000 for each Plaintiff.


Dated:  March 29, 2023          Respectfully submitted,
                                **ORBACH HUFF & HENDERSON LLP**

                                By:   /s/ *Kevin E. Gilbert*
                                      Kevin E. Gilbert
                                      Christopher R. Creech
                                      Attorneys for Defendants
                                      COUNTY OF ALAMEDA, STEVEN
                                      HOLLAND and MONICA POPE

ORBACH HUFF & HENDERSON LLP

Defs' Motion for New Trial or, in the alt, for Remittitur Pursuant to FRCP Rule 59 [20-cv-04679-WHA]